[Cite as *In re Z.H.*, 2013-Ohio-2523.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:


Z.H.


A NEGLECTED AND
DEPENDENT CHILD

JUDGES:
Hon. John W. Wise, P. J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 2013 AP 02 0010

O P I N I O N


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Juvenile Division, Case No. 11
                             JN00493


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      June 17, 2013


APPEARANCES:

For Appellant Mother                    For Appellee

JOHN A. GARTRELL                        DAVID HAVERFIELD
ASSISTANT PUBLIC DEFENDER               TCJFS
153 North Broadway                      389 16th Street SW
New Philadelphia, Ohio  44663           New Philadelphia, Ohio  44663

Guardian At Litem                       For Child

KAREN DUMMERMUTH                         ADAM WILGUS
349 East High Avenue                     401 Tuscarawas Street West, Suite 200
New Philadelphia, Ohio  44663            Canton, Ohio  44702

*Wise, P. J.*

{¶1}    Appellant Melody Kollar appeals the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of her son, Z.H., to Appellee Tuscarawas County Job and Family Services ("TCJFS"). The relevant facts leading to this appeal are as follows.

{¶2}    Z.H., born in 1998, is the son of Richard H. and Appellant Melody.[1] There have been a number of agency interventions over the years regarding appellant's parenting, both as to Z.H. and appellant's two other children, including a court order of temporary custody in Harrison County in 1999. See Tr. at 7. The persistent concerns leading to court intervention by TCJFS in the present case include Z.H.'s absenteeism from school and appellant's alcohol abuse and mental health issues. On September 15, 2011, TCJFS filed a complaint in the trial court alleging that Z.H. was a neglected and dependent child. On October 18, 2011, following a combined adjudicatory and dispositional hearing (by consent of the parties), at which both appellant and Richard H. stipulated to an amended complaint, the trial court found Z.H. to be neglected and dependent under R.C. 2151.03 and 2151.04. The court also ordered Z.H. to remain in the temporary custody of TCDFS.

{¶3}    On August 17, 2012, TCDFS filed a motion for permanent custody. An evidentiary hearing was conducted on January 10, 2013. Appellant appeared with counsel. In addition, an attorney appointed to represent Z.H. appeared, as well as the guardian ad litem and counsel for the agency. Richard H. proceeded pro se at the hearing.

---

[1]  Richard H. has not appealed the permanent custody ruling below, and appellant does not directly argue in her brief in support of custody or placement with him.

{¶4} On January 14, 2013, the trial court issued a judgment entry granting permanent custody of Z.H. to TCJFS.

{¶5} On February 13, 2013, appellant filed a notice of appeal. She herein raises the following sole Assignment of Error:

{¶6} "I.   THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST."

I.

{¶7} In her sole Assignment of Error, appellant-mother challenges the trial court's grant of permanent custody of Z.H. to TCJFS.

{¶8} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App.No. CA–5758. *See, also, C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Furthermore, it is well-established that the trial court in a permanent custody case is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* Summit App.No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St .2d 230, 227 N.E.2d 212.

{¶9} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶10} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, *** and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶11} "(b) The child is abandoned.

{¶12} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶13} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."

{¶14} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (*see* R.C. 2151.414(B)(1)(a), *supra*), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially

caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *See* R.C. 2151.414(E)(1).

**{¶15}** At the permanent custody hearing on January 10, 2013, TCJFS first called Toni Anderson, a supervisor for the agency. She noted that Z.H., as of the date of the hearing, was fourteen years old and had been in the temporary custody of the agency since September 15, 2011. She also noted that the father of Z.H., Richard H., appeared for the initial adjudicatory/dispositional hearing in the case but never approached the agency seeking any case plan services. Richard furthermore did not respond to agency contact attempts. According to Anderson, there have been four cases and eighteen investigations involving appellant. Tr. at 4-7. Appellant was often hard to contact due to changed phone numbers or lost cell phones. Tr. at 12.

**{¶16}** Anderson also went over the aspects of appellant's case plan. Appellant was to (1) complete a psychological evaluation, (2) attend counseling, (3) comply with psychiatric services, (4) complete parent education, (5) complete a drug and alcohol assessment with treatment, (5) attend family counseling with Z.H., and (6) obtain transportation. Appellant participated in the services, except for the drug and alcohol assessment. *See* Tr. at 10-11. However, Anderson indicated: "This agency has been involved with Ms. Kollar for many years for the same situation, over and over again.

The same services have been provided. Each time that she has cooperated and completed the services, despite that fact, each subsequent report, nothing changed. We continued to be involved for the same reasons. Therefore, in my opinion, the services had no impact on making changes in her behavior or her ability to parent [Z.H.] effectively." Tr. at 11.

{¶17} TCJFS called appellant to the stand during the agency's case. Appellant recalled that even though at one time she was living just a couple of blocks from Z.H.'s middle school, she had major problems getting him to school: "I was doing everything I could, I mean, I *** even went and got the principal to come and get [Z.H.]. So yeah, I was having a rough time." Tr. at 50. She told the court that "transportation is not a problem anymore" and that her van had been fixed, but she conceded that she did not presently have a driver's license. Id. She summarized that the primary change she had undertaken to have Z.H. returned to her was "more family support." Tr. at 63. She presently receives SSI benefits, but she has taken some recent adult education courses. Tr. at 71.

{¶18} TCJFS also called as a witness Wendy Smitley, a family service aide and parent educator for the agency. Smitley recalled that appellant did successfully complete the agency's parenting class, which ran from November 2011 until January 2012. However, there was "some conflict with other participants" who apparently accused appellant of smelling of alcohol at some meetings. Tr. at 86. Smitley expressed concern about appellant's "cycling" moods during visits with Z.H. and her ineffectiveness as being an authority figure for the child. See Tr. at 88, 91.

**{¶19}** In support of her own case-in-chief, appellant called three witnesses. The first, Amanda Mears, a case manager for Southeast, Inc. opined that appellant had matured and was taking more responsibility for herself, although Mears conceded she had only been familiar with the case for a short time. *See* Tr. at 101-104, 111. The second witness, Shane Graef, is appellant's periodic live-in boyfriend.[2] He suggested that appellant had "been through enough" and should have Z.H. back with her. *See* Tr. at 119-122. Finally, appellant's sister, Darlene Mast, took the stand, stating her belief that TCJFS had been over-involved in appellant's life. *See* Tr. at 128-132.

**{¶20}** We have recognized that even where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *See, e.g., In re Pendziwiatr/Hannah Children,* Tuscarawas App.No. 2007 AP 03 0025, 2007–Ohio–3802, ¶ 27. This principle is particularly relevant where, as here, there have been repeated agency attempts over the years to correct chronic parenting issues that are now negatively impacting an adolescent child as he moves closer to the responsibilities of adulthood. Upon review, we hold the trial court did not err in determining that Z.H. could not be placed with appellant or Richard within a reasonable time or should not be placed with appellant or Richard. *See* R.C. 2151.414(B)(1)(a).

**{¶21}** Finally, in determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

---

[2]  There is a lack of clarity in the record as to whether appellant and Graef were living together as of the date of the hearing.

**{¶22}** "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

**{¶23}** "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶24}** "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

**{¶25}** "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶26}** "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

**{¶27}** At the evidentiary hearing, evidence was adduced that Z.H. requires close supervision and has exhibited some behavioral problems. *See* Tr. at 18. He is on medication for ADHD. Tr. at 19. He is getting proper supervision in his foster placement. *Id.* Furthermore, according to Ms. Smitley, Z.H. is able to easily manipulate appellant. Tr. at 95. Smitley also recalled visiting appellant's residence in New Philadelphia in April 2012. She described it as "much like a teenager's home" with an abundance of posters of entertainers and movies on the walls and a pro-marijuana magnet on the refrigerator. See Tr. at 92-93. The house was cluttered, although not unsanitary, according to Smitley. Tr. at 93. Smitley was under the impression that appellant had nonetheless

moved from that residence. *Id.* Smitley also opined as follows regarding appellant's ability to resume custody: "Yeah, I don't think she was quite ready to handle [Z.H.'s] demeanor as a teenager, and I don't think she had created enough authority to, putting herself in authority over him, to enforce going to school and following rules." Tr. at 94.

**{¶28}** The guardian ad litem, Attorney Karen Dummermuth, recognized appellant's participation in the case plan and opined in her report that appellant and Z.H. clearly love each other. Guardian ad Litem Report at 3. However, she recommended permanent custody to the agency at this point, specifically concluding: " *** Melody has experienced significant trauma in her life that she has simply been unable to adequately overcome in order to provide a safe, stable home for herself or her son. [Z.H.] does not have the ability to successfully function on his own, and Melody is unable to provide the assistance he needs." Report at 4.

**{¶29}** It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children* (Nov. 13, 2000), Stark App.No. 2000CA00244, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

**{¶30}** In the case sub judice, upon review of the record and the findings and conclusions therein, we conclude the trial court's judgment granting permanent custody of Z.H. to the agency was made in the consideration of the child's best interest and did not constitute an error or an abuse of discretion under the circumstances presented.

**{¶31}** Appellant's sole Assignment of Error is overruled.

**{¶32}** For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

_____

_____

_____

                                            JUDGES

JWW/ 0530

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF: :
: JUDGMENT ENTRY
Z.H. :
:
A NEGLECTED AND :
DEPENDENT CHILD : Case No. 2013 AP 02 0010


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.

Costs assessed to appellant.


_____

_____

_____

JUDGES